IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DONALD R. MAYES,            )<br>                             )<br>     Plaintiff,             )<br>                             )<br>     v.                      )<br>                             )<br>GREGORY A MOORE,             )<br>SMITHFIELD MANAGEMENT        )<br>CORPORATION, SMITHFIELD      )<br>BARBECUE, INC., SMITHFIELD'S )<br>OF GUM BRANCH, INC.,         )<br>MIDATLANTIC RESTAURANT       )<br>CORPORATION, SMITHFIELD'S    )<br>OF NEW BERN, INC.,           )<br>SMITHFIELD'S OF OGDEN, INC., )<br>SMITHFIELD'S OF ZEBULON, INC.,)<br>SMITHFIELD'S OF CLAYTON, INC.,)<br>SMITHFIELD'S OF FAYETTEVILLE,)<br>INC., 421 HARNETT, INC.,     )<br>MOORE COMMONWEALTH LLC,      )<br>MOORE & MOORE LLC,           )<br>42 WEST, LLC, 401 & 1010, LLC,)<br>S.C.N.B. REAL ESTATE SERVICES,)<br>LLC, CLAYTON 40/42, INC.,    )<br>JONES SAUSAGE RD., INC.,     )<br>NEWTON GROVE 40, INC.,       )<br>MCCULLERS CROSSROADS, INC.,  )<br>                             )<br>     Defendants.             ) | 1:04CV811 |

MEMORANDUM OPINION and ORDER

OSTEEN, District Judge

Plaintiff Donald R. Mayes ("Plaintiff") filed this action against Defendants for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended ("Title VII"), for compensatory and punitive damages under 42 U.S.C. § 1981a, and various violations of state law, including an unfair

and deceptive trade practice claim under N.C. General Statute section 75-1.1.  The following Defendants seek dismissal of the Title VII claim:  individual Defendant Gregory A. Moore ("Moore") and organizational Defendants Smithfield Barbecue, Inc., Smithfield's of Gum Branch, Inc., MidAtlantic Restaurant Corporation, Smithfield's of New Bern, Inc., Smithfield's of Ogden, Inc., Smithfield's of Zebulon, Inc., Smithfield's of Clayton, Inc., Smithfield's of Fayetteville, Inc., 421 Harnett, Inc., Moore Commonwealth LLC, Moore & Moore LLC, 42 West, LLC, 401 & 1010, LLC, S.C.N.B. Real Estate Services, LLC, Clayton 40/42, Inc., Jones Sausage Rd., Inc., Newton Grove 40, Inc., and McCullers Crossroads, Inc. ("organizational Defendants").  The remaining Defendants join Moore and the organizational Defendants in seeking dismissal of Plaintiff's section 75-1.1 claim.  For the reasons stated below, the court will grant the motion in part and deny the motion in part.

I.   **FACTUAL BACKGROUND**

The facts, in the light most favorable to Plaintiff, are as follows.  Plaintiff responded to an employment advertisement that sought one person to be Chief Financial Officer for Smithfield Management Corporation ("SMC") and estate manager for Moore. Plaintiff accepted an offer for these jobs, which involved handling SMC's finances and managing Moore's estate.  Plaintiff's compensation was worth $180,000 per year, including living quarters on Moore's estate.

2

Plaintiff began working during January 2003. Later, Moore began making sexual advances, including inappropriate touching and rubbing, toward Plaintiff. Moore's advances continued, and Plaintiff told Moore to stop. Moore did not. Moore even tried to control Plaintiff's personal life, including prohibiting Plaintiff from leaving his living quarters on Moore's estate at night. Once, Moore and Plaintiff traveled together to look at Moore's beach properties. During this trip, Moore made several additional sexual advances, which Plaintiff refused.

After this trip, Plaintiff returned to Moore's estate to find Moore had evicted Plaintiff by moving all of his property to a hotel. Moore also informed Plaintiff that he had sabotaged his employment opportunity by refusing Moore's advances, and thus, Moore fired Plaintiff in early February 2003.

During August 2003, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging Moore's unlawful discrimination against him. The EEOC granted Plaintiff a right-to-sue letter. Plaintiff sued only SMC in the EEOC action.

Plaintiff, however, alleges that Moore owns a controlling interest in each of the named organizational Defendants. Plaintiff alleges each organizational Defendant, moreover, is an instrument of SMC, and all the organizational Defendants are a single enterprise. Thus, Plaintiff alleges, Moore and SMC "dominate the finances, policies[,] and business practices of the other named [organizational] [D]efendants such that there is no

3

separate existence for the other named [D]efendants." (Pl.'s Mem. Law Resp. Defs.' Mot. Dismiss Sec. Am. Compl. at 5.) Furthermore, all Defendants, where relevant, are founded under North Carolina law.

**II. ANALYSIS**

Defendants make three separate motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). The court considers each in turn. A court should not grant "[a] motion to dismiss for failure to state a claim upon which relief may be granted made pursuant to Federal Rule of Civil Procedure 12(b)(6) . . . 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief.'" Gottesman v. J.H. Batten, Inc., 286 F. Supp. 2d 604, 610 (M.D.N.C. 2003) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)). A court assesses claims using the plaintiff's well-pled facts, in the light most favorable to the plaintiff. E.g., Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).[1]

    A. Motion to Dismiss Plaintiff's Title VII Action

        1. Title VII Claim Against Moore

Moore, Plaintiff's supervisor, moves to dismiss himself from the Title VII claim. Within this circuit, individual

---

[1] Plaintiff claims that Defendants have referred to matters outside the complaint. If considered, generally the court must treat the motion as a summary judgment motion. See Fed. R. Civ. P. 12(b); Dickey v. Greene, 729 F.2d 957 (4th Cir. 1984). The court will consider only the allegations set forth in the complaint, construing them in Plaintiff's favor.

4

supervisors, unless they are otherwise an employer under the statute, are not liable for Title VII claims.  See, e.g., Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 181 (4th Cir. 1998) (rejecting attempts to create individual liability in Title VII and noting that "every circuit that has confronted this issue since the enactment of the C[ivil Rights Act] has rejected claims of individual liability.  These circuits have founded this conclusion on the language of Title VII and the fact that its remedial scheme seems so plainly tied to employer, rather than individual, liability").

Plaintiff, however, cites a series of district court cases from the First, Second, and Seventh Circuits to support his rule that personal liability is available under Title VII under an "alter-ego" theory.  The cases divide along two lines—one not requiring fraud or injustice and another requiring those conditions.

In Curcio v. Chinn Enterprises, Inc., the district court held "a supervisor may be liable as an 'employer' under Title VII when the supervisor's role is more than that of a mere supervisor but is actually identical to that of the employer."  887 F. Supp. 190, 194 (N.D. Ill. 1995).  Not only is this proposition contrary to Fourth Circuit precedent, but also, the Seventh Circuit has since indicated Title VII has no personal liability and "Curcio . . . [is] inconsistent with [the Seventh Circuit's] current caselaw" on personal liability under Title VII.  Cianci v. Pettibone Corp., 152 F.3d 723, 729 (7th Cir. 1998).  Plaintiff's

5

First Circuit case law relies upon Curcio. See Pacheco Bonilla v. Tooling & Stamping, Inc., 281 F. Supp. 2d 336, 338-39 (D.P.R. 2003); Canabal v. Aramark Corp., 48 F. Supp. 2d 94, 97-98 (D.P.R. 1999); Santiago v. Lloyd, 33 F. Supp. 2d 99, 103-04 (D.P.R. 1998). Because its own circuit has rejected this theory and Fourth Circuit precedent is not reconcilable with it, Plaintiff gives no persuasive reason justifying this rule's application.

Plaintiff's case law from the Second Circuit, however, proffers a different rule on the alter-ego theory that is consistent with Fourth Circuit law. Plaintiff's cited case holds a plaintiff may sue an individual for liability (under a different federal statute) when he alleges "(1) that the [individual] exercises such dominion and control with respect to the transaction attacked that the corporation had no separate will of its own; and (2) that the domination and control was used to commit a fraud or wrong against the plaintiff [that] proximately caused the plaintiff's injuries." Lane v. Maryhaven Ctr. of Hope, 944 F. Supp. 158, 163 (E.D.N.Y. 1996).[2] Under this rule, when the shareholder has used the corporate form fraudulently or wrongly, that individual, even if not technically the Title VII "employer," can be a proper Title VII defendant. This rule has support in Fourth Circuit case law, see Fluker v. Kenney's Franchise Corp., No. 89-1760, 1990 WL 101418, at *1-*2 (4th Cir. July 10, 1990) (affirming district court ruling that

---

[2]The court assumes similar analysis would apply to a Title VII cause of action even though Lane applied to a different federal statute.

6

assessed Title VII liability under a similar theory), as well as at least one other circuit, see <u>Worth v. Tyer</u>, 276 F.3d 249, 259-60 (7th Cir. 2001).

This rule's rationale is fairness. Normally, a shareholder is not liable for the corporate liability. If the shareholder controlled and used the corporate form inequitably, then the controlling shareholder is, in equity, the party that should pay the liability.[3] The individual[4] is responsible for the Title VII violation not because he committed the violation but because he unfairly used the corporate form; thus, he should not receive the usually attendant "limited liability" afforded to shareholders. <u>See</u> <u>id.</u> at 259-60. This is a "veil-piercing" claim within the Title VII claim, which the following discussion explains further, and the plaintiff must allege facts for this claim within his Title VII action to avoid Rule 12(b)(6) dismissal.

In establishing a veil-piercing claim, the court applies federal common law standards but notes that the result is the same under North Carolina or federal law.[5] As stated earlier,

---

[3]An assumption throughout this analysis is that the corporation cannot otherwise pay its debts. The purpose of holding the individual liable, among other policies, is that he is the one who should pay when the corporation cannot otherwise pay its own debts. Otherwise, Plaintiff could simply assert that claim against SMC, without these legal gymnastics.

[4]The court discusses "individuals," but this discussion can apply to other controlling parties, such as shareholders that are corporations.

[5]Since this matter involves veil piercing under Title VII, federal common law, and not state law, may define the contours of veil piercing. <u>Cf.</u> <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S.
(continued...)

7

⁵(...continued)
742, 754-55, 118 S. Ct. 2257, 2265-66 (1998) (defining "employer" under 42 U.S.C. § 2000e(b) of Title VII using agency principles developed under federal common law because "Congress has directed federal courts to interpret Title VII based on agency principles[, and] [g]iven such an explicit instruction, [the Court] conclude[s] a uniform and predictable standard [afforded by federal common law] must [govern]"); American Bell Inc. v. Federation of Tel. Workers of Pa., 736 F.2d 879, 886 (3d Cir. 1984) (finding "[f]ederal [common] law governs liability" based on veil piercing under a federal cause of action). The Fourth Circuit applies federal standards to a veil-piercing claim under other federal statutes because "veil[ piercing] determines who is liable" under the statute, see Thomas v. Peacock, 39 F.3d 493, 502-03 (4th Cir. 1994), rev'd on other grounds, 516 U.S. 349, 116 S. Ct. 862 (1996), and this court assumes this circuit would apply the same standards to a Title VII action that includes veil piercing.

However, this court and circuit could apply state law standards, as no case law directly states this court must apply federal common law to this situation, and the Supreme Court, in other federal law, recognizes, without criticism, that circuits split on whether to apply federal law or borrow state law in veil piercing within a federal claim. United States v. Bestfoods, 524 U.S. 51, 63 n.9, 118 S. Ct. 1876, 1885-86 n.9 (1998) (noting in interpreting another federal statute that "[t]here is significant disagreement among courts and commentators over whether . . . courts should borrow state law, or instead apply a federal common law of veil piercing").

No reason supports deciding definitively whether federal or state law governs the veil-piercing claim when no conflict exists between the federal and state law. See Mobil Oil Corp. v. Linear Films, Inc., 718 F. Supp. 260, 265-68 (D. Del. 1989) (analyzing a federal question claim that involved veil piercing and avoiding a "protracted choice[-]of[-]law analysis" because any possible law that applied required the same elements). Generally, the two laws agree. In re Acushnet River & New Bedford Harbor Proceedings Re Alleged PCB Pollution, 675 F. Supp. 22, 33 (D. Mass. 1987) (noting "the choice between state and federal law [in veil piercing within a federal claim] may in many cases present questions of academic interest, but little practical significance"); Scoles et al., Conflict of Laws, § 23.10, at 1117 (3d ed. 2000 & Supp. 2001)("A federal common law test for piercing (in claims based on federal law) has not been adopted. The federal court either adopts the state test or frequently finds that there is no conflict between the laws of potentially interested states: there is thus no need to add another, a federal layer."). But cf. Thomas, 39 F.3d at 504 n.16 (noting a difference between the Fourth Circuit's federal standard and

(continued...)

shareholders in a corporation are not generally responsible for the corporation's debts. See Keffer v. H.K. Porter Co., 872 F.2d 60, 64 (4th Cir. 1989); accord Postell v. B&D Constr. Co., 411 S.E.2d 413, 419 (N.C. Ct. App. 1992). The corporate business organization, thus, affords the shareholder a veil of protection from the corporation's liabilities. A court can disregard the corporate form and impose liability, or pierce the veil of protection, under the alter-ego theory when (1) the shareholder dominates and controls the organization and (2) imposing such liability is needed to avoid injustice. See Thomas v. Peacock, 39 F.3d 493, 504 (4th Cir. 1994), rev'd on other grounds, 516 U.S. 349, 116 S. Ct. 862 (1996); accord Pilot Title Ins. Co. v. Northwestern Bank, 181 S.E.2d 799, 803 (N.C. Ct. App. 1971). Injustice can include a finding that the shareholder committed fraud, but fraud is not required. Thomas, 39 F.3d at 504 n.16.

---

[5](...continued)
other state standards).
    Thus, this court could apply federal or state law. The court assumes it would apply North Carolina's choice-of-law rules if it applied state law. Cf. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S. Ct. 1020 (1941) (holding, in a diversity matter, that federal courts must apply the forum state's choice-of-law rules in deciding what law governs a state-law-based claim). Under North Carolina's choice-of-law rules, the substantive law from the state of incorporation determines the veil-piercing elements, see Richmond v. Indalex Inc., 308 F. Supp. 2d 648, 658 (M.D.N.C. 2004) (stating that "given the opportunity, the North Carolina Supreme Court would apply the law of the state of incorporation to determine whether a defendant could pierce the corporate veil"), which, in these facts, is also North Carolina law. Thus, the court, in its analysis, notes that the rules for stating a veil-piercing claim under either substantive law is the same.
9

Courts have stated "gross undercapitalization of the [controlled] corporation; failure to observe corporate formalities; nonpayment of dividends; siphoning of the corporation's funds by the dominant corporation; non-functioning of officers and directors; absence of corporate records; and the fact that the corporation is merely a facade" are relevant factors to consider. <u>Keffer</u>, 872 F.2d at 65; <u>accord</u> <u>Copley Triangle Assocs. v. Apparel Am., Inc.</u>, 385 S.E.2d 201, 203 (N.C. Ct. App. 1989) (noting similar factors). No particular factor is determinative; rather, "decisions to pierce a corporate veil . . . must be taken reluctantly and cautiously, [but] courts will not hesitate to take such action when justice so requires." <u>Keffer</u>, 872 F.2d at 64; <u>accord</u> <u>Glenn v. Wagner</u>, 329 S.E.2d 326, 332 (N.C. 1985) (stating that courts look for "element[s] of injustice or abuse of corporate privilege").

Plaintiff alleges Moore, who owned controlling shares in the relevant organizations, dominated those organizations. Nowhere in the complaint or in his brief opposing this motion does Plaintiff claim Moore fraudulently or unfairly used the corporate form. Specifically, Plaintiff's claim is, "Moore is an 'employer' within the meaning of the act and subject to individual liability for his discriminatory acts as owner, Chief Executive Officer, alter-ego of the corporation, and direct supervisor of Plaintiff." (Pl.'s Mem. Law Resp. Defs.' Mot. Dismiss Sec. Am. Compl. at 11.) Thus, Plaintiff's allegations are not that Moore is liable for the Title VII violation because

10

he abused the corporate form; Moore is personally liable because he committed the acts.  Title VII does not support such liability.

Even viewing the complaint independently to see if the elements of the alter-ego doctrine exist, the court finds no general allegations of injustice or unfairness, see Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), or specific allegations of fraud, see Fed. R. Civ. P. 9(b) ("In all averments of fraud . . ., the circumstances constituting fraud . . . shall be stated with particularity."), within the complaint, and dismissal is appropriate, see Richmond v. Indalex Inc., 308 F. Supp. 2d 648, 658 (M.D.N.C. 2004) (dismissing complaint under Rule 12(b)(6) where "no allegations that [defendant] . . . abused its corporate privilege or that the [c]ourt should disregard [the] corporate form to prevent an injustice to [p]laintiff" exist).  Thus, because the claim is no more than a Title VII claim premised on direct individual liability, the court will dismiss the Title VII action against Moore.

      2.   Title VII Claims Against Organizational Defendants

Plaintiff did not name any of the organizational Defendants in his EEOC charge.  Failure to name a party in the EEOC charge normally means the plaintiff did not exhaust the administrative remedies against those parties, and a district court must dismiss the case.  See Alvarado v. Board of Trs. of Montgomery Cmty. Coll., 848 F.2d 457, 458-59 (4th Cir. 1988) ("Under Title VII, a

11

civil action may be brought after administrative proceedings have ended or conciliation attempts have failed only 'against the respondent named in the [administrative] charge.'" (alteration in original) (citing 42 U.S.C. § 2000e-5(f)(1))).

Fourth Circuit dictum, however, suggests the "substantial-identity" exception can limit this rule. Id. at 461 ("The Fourth Circuit has not had occasion to decide whether to adopt the substantial[-]identity exception, but we note that language [applying the exception] . . . was quoted with approval by this court in dictum . . . ."); E.E.O.C. v. American Nat'l Bank, 652 F.2d 1176, 1186 n.5 (4th Cir. 1981) (stating in dictum that "[c]ourts have developed exceptions to this rule [requiring that all defendants be named in the administrative charge] . . . where it is clear that the defendant through some relationship with the named respondent had notice of the charges and participated in the conciliation process"). If unnamed defendants are substantially or "functionally" identical to named ones, then the plaintiff may sue all defendants in a district court action, even though some defendants were unnamed in the administrative action. E.g., Nicol v. Imagematrix, Inc., 767 F. Supp. 744, 751 (E.D. Va. 1991). Some courts define substantial identification through factors, including

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its

12

>absence from the EEOC proceedings resulted in actual
>prejudice to the interests of the unnamed party; 4)
>whether the unnamed party has in some way represented
>to the complainant that its relationship with the
>complainant is to be through the named party.

Glus v. G.C. Murphy Co., 562 F.2d 880, 888 (3d Cir. 1977). The court considers these factors useful guides and applies them to this case.

Plaintiff fails to show substantial identity between named and unnamed Defendants. Under the first factor, Plaintiff was CFO to SMC and estate manager to Moore, and thus, Plaintiff could reasonably ascertain the identity of all the Defendants and should have known of SMC's affiliated businesses. Under the second factor, the unnamed Defendants' interests are also not so similar to SMC's that their presence was unnecessary, and thus, under the fourth factor, SMC did not represent the other Defendants' interests. Defendants are separate business entities and are not liable for each other's debts absent grounds for veil piercing, which Plaintiff does not assert.[6] Thus, each entity must know Plaintiff is suing them under Title VII, and without being named, the unnamed Defendants had no reason to know Plaintiff, in suing SMC, was actually suing all the related Defendants that are separate business organizations. Moreover,

---

[6]Affiliated corporations are not generally liable for each other's debts, but a court will pierce the veil of protection among affiliated corporations under appropriate conditions. In re Bowen Transps., Inc., 551 F.2d 171, 179 (7th Cir. 1977) ("The separate corporateness of affiliated corporations owned by the same parent may be equally disregarded under the proper circumstances.").

no one represented those businesses' interests in the administrative process. Plaintiff, thus, fails to show substantial identity, and the court will grant the motion to dismiss on this ground.

    B.    N.C. Unfair and Deceptive Trade Practice Claim

Defendants move to dismiss Plaintiff's N.C. General Statute section 75-1.1 claim. Plaintiff's allegations supporting this claim are that Defendants' false and deceptive advertising for the job position induced Plaintiff "into a vulnerable situation in which . . . Moore intended to commit tortuous acts against Plaintiff." (Pl.'s Mem. Law Resp. Defs.' Mot. Dismiss Sec. Am. Compl. at 16.) Defendants' argument against the claim is that employer-employee relationships, as a matter of law, are outside section 75-1.1's ambit.

Section 75-1.1(a) provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." "Commerce," moreover, "includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." N.C. Gen. Stat. § 75-1.1(b). "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001). No party argues that Defendants' conduct would not be a business activity that could be unethical or unscrupulous.

14

"The purpose of [section] 75-1.1 is to provide a civil means to maintain ethical standards of dealings between persons engaged in business and the consuming public within this State and applies to dealings between buyers and sellers at all levels of commerce." United Va. Bank v. Air-Lift Assocs., Inc., 339 S.E.2d 90, 93 (N.C. Ct. App. 1986). While this definition is expansive, certain claims do not fall under section 75-1.1. For example, "employer-employee relationships do not fall within the intended scope of [section] 75-1.1" because other statutes, such as the worker's compensation statutes, govern such claims' dispositions. Buie v. Daniel Int'l Corp., 289 S.E.2d 118, 119–20 (N.C. Ct. App. 1982). However, just because plaintiff and defendant are employee and employer does not prevent establishing a successful claim under section 75-1.1. It only normally excludes "run-of-the-mill employment disputes." Dalton, 548 S.E.2d at 710.

Section 75-1.1 does not bar suits between employer and employee if the offending conduct occurred before or after the employment relationship's existence. See Johnson v. First Union Corp., 496 S.E.2d 1, 6–7 (N.C. Ct. App. 1998) (allowing employee's suit against employer for deceptive acts in relation to settlement of worker's compensation claim because the section 75-1.1 conduct, fraud in obtaining the settlement, occurred when plaintiff was no longer an employee). Plaintiff claims Defendants wrongfully induced him to take employment only to subject him to the alleged sexual advances. The offending conduct, misleading a prospective employee to induce him to

15

accept employment and face harassment, occurred before the employer-employee relationship existed. Thus, the exception does not apply, Plaintiff has stated a claim for relief, and the court will deny this part of the motion.

**III. CONCLUSION**

For the reasons stated above,

IT IS ORDERED that Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. The court grants the motion as to Plaintiff's Title VII claims against Gregory A. Moore, Smithfield Barbecue, Inc., Smithfield's of Gum Branch, Inc., MidAtlantic Restaurant Corporation, Smithfield's of New Bern, Inc., Smithfield's of Ogden, Inc., Smithfield's of Zebulon, Inc., Smithfield's of Clayton, Inc., Smithfield's of Fayetteville, Inc., 421 Harnett, Inc., Moore Commonwealth LLC, Moore & Moore LLC, 42 West, LLC, 401 & 1010, LLC, S.C.N.B. Real Estate Services, LLC, Clayton 40/42, Inc., Jones Sausage Rd., Inc., Newton Grove 40, Inc., and McCullers Crossroads, Inc. The court denies the motion to dismiss Plaintiff's North Carolina General Statute section 75-1.1 claim.

This the 16th day of February 2006.

_____
United States District Judge

16

Case 1:04-cv-00811-WLO-RAE   Document 49   Filed 02/16/06   Page 16 of 16